Phil S. Flemming (#014778)
YEN PILCH ROBAINA & KRESIN PLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@yprklaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Sheila Cleary, an individual,<br><br>    Plaintiff<br><br>v.<br><br>The Dobson Association, Inc., an Arizona nonprofit corporation,<br><br>    Defendant. | No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Sheila Cleary, by undersigned counsel, for her Complaint against Defendant, The Dobson Association, Inc., alleges as follows:

**NATURE OF ACTION**

1. This action seeks judgment and remedies for Plaintiff against Defendant The Dobson Association, Inc. ("Defendant" or "Dobson") for unlawful retaliation based on Plaintiff's protected actions under Title VII, 42 U.S.C. §§ 2000e, *et seq*., and violation of the Arizona Employment Protection Act, A.R.S. § 23-1501.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is a citizen of Arizona and the United States, who resides in Maricopa County, Arizona.

3. Defendant is a nonprofit corporation organized in the State of Arizona, with its operation headquarters in Mesa, Arizona.

4. Defendant is and was an employer at all relevant times.

5. Plaintiff was an employee of Defendant, at times relevant to this action.

6. This Court has proper jurisdiction based upon federal question jurisdiction, under 28 U.S.C. § 1331.

7. This Court also has supplemental jurisdiction over the state law claim, pursuant to 28 U.S.C. § 1367.

8. Venue is found in this District Court, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims in this action occurred in this District.

9. Plaintiff timely filed with a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue.

10. Plaintiff exhausted the administrative process and filed this action timely within ninety-days of Plaintiff's receipt of the EEOC's Notice of Right to Sue dated April 3, 2024.

**FACTUAL ALLEGATIONS**

11. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

12. Defendant hired Plaintiff as the Community Manager, beginning November 6, 2023.

13. Plaintiff had ten years' experience working with homeowner associations and similar jobs.

14. Defendant's Executive Director Fran Pawlak was Plaintiff's direct supervisor.

15. Ms. Pawlak initially supported Plaintiff in her employment and was friendly during work breaks.

16. During the week of Thanksgiving, Ms. Pawlak was speaking with Plaintiff when she said that the receptionist should not be in her position because she did not represent or fit in with the Dobson community demographics.

17. The receptionist to whom Ms. Pawlak referred is African American, while the large majority of the Dobson residents are Caucasian.

18. Plaintiff understood Ms. Pawlak was critical of the receptionist's race and

that Ms. Pawlak considered that a concern where the residents were mostly Caucasian.

19. Plaintiff objected and told Ms. Pawlak to lower her voice. Ms. Pawlak spoke loudly enough for the receptionist and another employee to overhear the demeaning and racist statements she said.

20. Rather than lower her voice or stop the discussion, Ms. Pawlak continued and said that management should find a reason to write-up the receptionist.

21. Ms. Pawlak also disparaged another employee who is half African American and told Plaintiff that employee had been demoted and would have her pay decreased.

22. Plaintiff protested Ms. Pawlak's statements, said she knew of no basis for any write-up of the receptionist, and told her to stop making racist comments.

23. After Ms. Pawlak left Plaintiff's office, Plaintiff walked out and saw both the receptionist and the other employee nearby who were visibly upset. Plaintiff asked if they had heard Ms. Pawlak, and they both nodded yes.

24. Plaintiff assured these two employees that she did not share Ms. Pawlak's racist statements and views, and she apologized that they had heard such things.

25. The conditions of employment were adversely changed.

26. On the Monday following Thanksgiving, the half African American employee who Ms. Pawlak recently had demeaned resigned.

27. Plaintiff learned that her direct supervisor manually changed employee time records for any employee who clocked in a few minutes early or left a few minutes late, to remove any time that would result in overtime owed to the employee, leaving such employees without overtime pay.

28. Plaintiff objected to Ms. Pawlak that it was improper to change an employee's truthful time records and to refuse to pay overtime for time worked.

29. On or about December 27, 2023, several employees told Plaintiff they did not receive their direct deposit payroll before the workday began, as they usually did. Plaintiff learned this was the fourth time in the year that payroll was processed late.

30. The receptionist contacted Plaintiff to report that she would take a day off

work as a result of the late payroll, because she needed to go to multiple banks and to pay bills in person.

31. Plaintiff informed Ms. Pawlak of the payroll delay and the receptionist calling in to take the day off.

32. Ms. Pawlak said she would treat the receptionist's absence as without leave and grounds to terminate that employee.

33. Ms. Pawlak directed Plaintiff not to speak with the employee-receptionist who is African American. That evening, December 27th, Plaintiff received a text from Ms. Pawlak directing her to have no further contact with the receptionist because she did not want anything to "circle back around" on Plaintiff or anyone else.

34. The next day, Ms. Pawlak terminated the receptionist but announced to Defendant's office personnel, on December 28, 2023, that the receptionist had resigned, which Plaintiff knew was untrue. The receptionist had taken leave for only one day and intended to return the next day.

35. Plaintiff corrected the information provided to the office personnel, telling them the receptionist had not resigned.

36. A couple of weeks later, Plaintiff received a visit in her office into a meeting on January 18, 2024 with her direct supervisor and a member of the Board of Directors. They immediately terminated Plaintiff and had her escorted from the premises. They did not tell her why she was terminated. Just that they had to let her go.

37. Defendant's acts and omissions violated Plaintiff's rights.

38. Defendant retaliated against Plaintiff shortly after her protected activities of objecting to and protesting the racist statements and mistreatment by Executive Director Ms. Pawlak against employees based on their race or ethnicity.

39. Defendant retaliated against Plaintiff shortly after she reported that changes to payroll records were unlawful and that the late payroll led to the receptionist taking leave for a day.

40. Defendant retaliated against Plaintiff when it terminated her soon after her

4

1 protected activities.

2     41. Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, compensatory damages, garden-variety distress and anxiety, and harm to her professional reputation, resulting from Defendant's unlawful acts.

    42. Plaintiff will seek to recover reasonable attorneys' fees and costs upon prevailing on her legal claims, under Title VII.

## Claim One

## Violation of Title VII, as Amended

    43. Plaintiff incorporates all prior allegations as though fully set forth herein.

    44. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin ....." 42 U.S.C. § 2000e-2(a)(1).

    45. Defendant is an employer and Plaintiff was an employee within the definitions of Title VII, 42 U.S.C. § 2000e(b) and (f).

    46. Defendant retaliated against Plaintiff after she protested against the race and national origin discrimination she observed by her direct supervisor towards one employee who is African American and a second employee who is half African American.

    47. Plaintiff also reported the race and national origin discrimination were unlawful to the Executive Director Ms. Pawlak.

    48. Defendant retaliated and substantially changed the work conditions for Plaintiff.

    49. Defendant retaliated and terminated Plaintiff's employment.

    50. Plaintiff has suffered and continues to suffer damages resulting from Defendant's retaliation in violation of Title VII.

    51. Plaintiff seeks remedies including but not limited to compensatory damages and equitable relief, including lost wages and benefits, lost future wages and benefits, garden variety emotional distress damages, reinstatement, and make whole relief.

52. Plaintiff seeks equitable relief requiring Defendant to post the rights under the Act and to require training for the Defendant-employer and its managers.

53. Plaintiff also seeks award against Defendant for her attorneys' fees and costs, incurred in this civil rights action.

## Claim Two

### Violation of Arizona Employment Protection Act

54. Plaintiff incorporates all prior allegations as though fully set forth herein.

55. The Arizona Employment Protection Act ("AEPA") establishes the right to pursue a claim where an employer wrongfully terminates an employee in violation of A.R.S. § 23-1501.

56. The AEPA prohibits an employer from retaliation against an employee for the employee's refusal to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state.  A.R.S. § 23-1501(A)(3)(c)(i).

57. The AEPA also prohibits an employer from terminating an employee in retaliation for the employee's disclosure to a manager "that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state . . .." A.R.S. § 23-1501(A)(3)(c)(ii).

58. Plaintiff objected to her direct supervisor regarding the supervisor's race biased actions and statements against an employee who is African American and another employee who is half-African American.

59. Plaintiff refused her direct supervisor's request to write-up the employee who is African American where there was no justification for any write-up.

60. Plaintiff disclosed to Defendant's management the biased statements and conditions of employment adverse to the other employees was unlawful discrimination. *See* Arizona Civil Rights Act A.R.S. §§ 41-1461, *et seq*.

61.  Plaintiff reported that the employees' payroll had not arrived at its regular time, pursuant to Arizona wage laws. *See* A.R.S. §§ 23-350, *et seq*.

6

62. Plaintiff protested when her direct supervisor terminated the African American receptionist who had taken leave to address issues caused by the late payroll.

63. Defendant retaliated against Plaintiff for her protected actions when Ms. Pawlak changed the work conditions and made them adverse for Plaintiff.

64. Defendant retaliated against Plaintiff for her protected actions when it terminated her employment shortly after her reports to the manager.

65. As a result of Defendant's retaliation against Plaintiff for her protected actions under AEPA, Plaintiff has suffered damages, including lost income and benefits, lost future wages and benefits, professional harms, and garden variety emotional distress.

66. Plaintiff seeks award of her compensatory damages to be proven at trial.

67. Plaintiff seeks recovery of her costs, pursuant to A.R.S. §§ 12-332 and 341.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sheila Cleary prays for judgment entered on each claim in her favor and against Defendant The Dobson Association, Inc. and awarding her:

A. Make whole relief, compensatory damages, emotional distress, for lost wages, benefits, harm to reputation and garden variety emotional distress, in the amounts determined at trial;

B. Equitable relief including back pay and lost benefits, and front pay, reinstatement, and requiring Defendant to institute policies and undertake training to eradicate unlawful disability discrimination and unlawful retaliation;

C. Prejudgment and post-judgment interest in the amounts permitted by law;

D. Attorneys' fees and costs against Defendant, as authorized by Court rules or statutes, including but not limited to 29 U.S.C. § 794a, 42 U.S.C. §§ 1988a, and A.R.S. §23-364(G);

E. Taxable costs as the prevailing party;

F. Such further relief as this Court deems just and proper.

///

7

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims and issues set forth herein, to the extent permitted by law.

DATED this 10th day of May 2024.

                YEN PILCH ROBAINA & KRESIN PLC


By /s/ Phil S. Flemming
    Phil S. Flemming
    Attorneys for Plaintiff

8